Joan G. **RANDALL**, Plaintiff,

v.

Peter **GOLDMARK** et al.,
Defendants.

Civ. A. No. 73–1323–T.

United States District Court,
D. Massachusetts.

Nov. 13, 1973.

Frank P. Samford, III, John E. Bowman, Jr., Harvard Legal Aid Bureau, Cambridge, Mass., for plaintiff.

Kenneth A. Behar, Asst. Atty. Gen., Boston, Mass., for defendants.

## OPINION

TAURO, District Judge.

The plaintiff, Joan G. Randall, brings this action against Peter Goldmark, Secretary of Human Services for the Commonwealth of Massachusetts and others alleging a reduction of her AFDC shelter allowance in contravention of the Social Security Act and the United States Constitution. Plaintiff specifically attacks the decision of the Department of Public Welfare (DPW), reducing her housing allowance because of partial mortgage payments made by her spouse, from whom she is separated, on a house owned by them as tenants by the entirety and in which she is presently living. (Complaint, ¶ 13).

These partial payments are insufficient to meet monthly mortgage requirements and the mortgagee will soon institute foreclosure proceedings. Plaintiff further asserts that she needs a larger welfare housing allowance in order to avoid such foreclosure.

Plaintiff has filed a request for the convening of a three-judge court, a request for a preliminary injunction on the statutory claim alone, and a request for partial summary judgment. The plaintiff seeks, among other things, an injunction against defendants and all other persons acting in concert with them barring a reduction of plaintiff's AFDC payments as a result of the partial mortgage payments made by her separated husband. The plaintiff further requests a final order awarding any money wrongfully withheld and any consequential damages to her.

Plaintiff seeks similar relief on behalf of a proposed class. Because we do not find that the proposed class is so numerous that joinder is impractical or that the claims of the plaintiff are typical of the proposed class, the request to maintain the case as a class action is denied. Fed.R.Civ.P. 23(a).

Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, 2281, 2284; 42 U.S.C. §§ 601–609, 1983; and the Fourteenth Amendment to the United States Constitution. Pursuant to an agreement by the parties, the case was submitted on the papers filed for a decision on the merits.

## FACTS

On the basis of the record before us, we find the following facts.

Plaintiff resides in Massachusetts with her two minor children, aged four and twelve. She began receiving AFDC after her husband abandoned her in September, 1971. On June 19, 1972, the Essex County Probate Court entered a decree of separation for the plaintiff and her husband. The decree provided in pertinent part: "It is ordered that the respondent [plaintiff's husband] pay $25.00 a week for two children and $100.00 towards the mortgage. . . ."

On or about August 22, 1972, plaintiff received a notice from the Peabody Welfare Service Office which stated that: "This Department is planning to decrease your grant for the following reasons: receiving $100.00 monthly from husband toward mortgage payment. This $100.00 is to be deducted from your monthly grant. . . ."

Plaintiff requested a hearing on the validity of the proposed ruling. While awaiting the hearing, the plaintiff's decree of separation was amended so that the husband was required to make the $100.00 monthly mortgage payments directly to the bank. Following two hear-

ings plaintiff's appeal from the administrative decision of the DPW was denied.

DPW regulations allocate $103.00 per month as the maximum shelter allowance available to the plaintiff. Total monthly mortgage and tax payments on the house involved here are $184.00. Due to the reduction in her shelter allowance, plaintiff has not paid her share of the mortgage payments ($84.00). Because of the arrearage in mortgage payments, foreclosure proceedings are imminent and will undoubtedly result in plaintiff's eviction. (Affidavit of Frank P. Samford, III, October 24, 1973).

## PROCEDURAL ISSUES

Before reaching the merits, certain procedural issues present themselves for resolution. Briefly, these issues are:

1.) Does plaintiff's statutory claim have an independent basis for jurisdiction?

2.) Do plaintiff's allegations warrant the convening of a three-judge court?

3.) Do the plaintiff's constitutional claims achieve the level of substantiality necessary to confer jurisdiction upon this court?

For the following reasons we answer the first two procedural questions in the negative, and the last question in the affirmative.

## PROCEDURAL ISSUE # 1

■ The statutory claim alone fails to state facts sufficient for federal jurisdiction. Federal question jurisdiction (28 U.S.C. § 1331) requires that a minimum of $10,000.00 be in controversy. Direct damage to the plaintiff falls considerably below the threshold amount. Indirect damage such as her loss of fu-

ture property rights, the disruption of her home, and the right to future welfare benefits are too speculative for this court to properly consider. Rosado v. Wyman, 414 F.2d 170, 176 (2 Cir. 1969), rev'd on other grounds, 397 U.S. 397, 405, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). See Wright, Federal Courts § 33 (1970).

■ Following the Second Circuit's reasoning in *Rosado*, we hold that the plaintiff also failed to allege jurisdiction under 28 U.S.C. § 1343. The Social Security Act is not a law providing for "equal rights" so that jurisdiction exists under 28 U.S.C. § 1343(3). Rosado v. Wyman, 414 F.2d 170, 178 (2 Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). *But see* Rosado v. Wyman, 397 U.S. 397, 405 n. 7, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Connecticut Union of Welfare Employees v. White, 55 F.R.D. 481, 486 (D.Conn.1972).

## PROCEDURAL ISSUE # 2

■ Plaintiff's allegations do not warrant convening a three-judge court.[1] It is not necessary to convene a three-judge court when the constitutionality of a statute or regulation is conceded, and only its unconstitutional application is in issue.

■■ No regulation of the Massachusetts DPW precisely covers defendants' action in this case. We are dealing, therefore, with an administrative practice. Plaintiff complains that the welfare authorities have relied on broadly worded regulations, valid on their face, to support an unconstitutional administrative action. (Complaint ¶ 13). The plaintiff does not request an injunction against any specific state statute or

1. "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." 28 U.S.C. § 2281.

regulation. The three-judge court statute:

> [D]oes not encompass injunctions sought on the ground that a valid statute or order is being executed in a manner prejudicial to constitutional rights.

Benoit v. Gardner, 351 F.2d 846, 848 (1 Cir. 1965); Ex parte Bransford, 310 U. S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); Massachusetts Welfare Rights Organization v. Ott, 299 F.Supp. 296 (D.Mass.1969), aff'd, 421 F.2d 525 (1 Cir. 1969).

### PROCEDURAL ISSUE # 3

■ The plaintiff makes a strong equal protection claim. She alleges in effect that she is eligible for and should receive a housing allowance as do others similarly situated. Reed v. Reed, 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Her position is that she is being deprived of her housing allowance because of an arbitrary and unconstitutional administrative action of the Department of Public Welfare. The facts involved in plaintiff's contention will be discussed in detail as we deal with the substantive issues. For present purposes it is sufficient to observe that plaintiff's allegations constitute an equal protection claim within § 1983 of sufficient magnitude to invoke the jurisdiction of this court pursuant to 28 U.S.C. § 1343. Levering & G. Co. v. Morrin, 289 U.S. 103, 105–106, 53 S.Ct. 549, 77 L.Ed. 1062 (1933).

■ Faced with a substantial constitutional claim, we have the power to exercise pendent jurisdiction over a statutory claim arising out of the same nucleus of operative fact. U.M.W. v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L. Ed.2d 218 (1966); Alvarado v. Schmidt, 317 F.Supp. 1027, 1030 (W.D.Wis.1970).

■ Further, the resolution of a case on constitutional grounds should always be avoided when alternative statutory grounds exist, Ashwander v. TVA, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) so we shall first direct our attention towards the statutory claim.

### PLAINTIFF'S STATUTORY CLAIM

At issue is DPW's ruling that plaintiff is ineligible for a welfare housing allowance because her spouse makes partial mortgage payments, pursuant to a separate support order, on a home in which she presently resides and which is owned by them as tenants by the entirety. (Appeal AFDC 13420, April 9, 1973). These partial payments are insufficient to meet the monthly mortgage requirements and the mortgagee will soon institute foreclosure proceedings. Plaintiff further asserts that she needs her welfare housing allowance in order to avoid such foreclosure.

The Social Security Act requires state welfare plans to:

> [P]rovide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, . . . whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income;

42 U.S.C.A. § 602(a)(7) (Supp.1973). HEW has defined "other income and resources" to mean:

> [O]nly such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered; . . . .

45 C.F.R. § 233.20(a)(3)(ii)(c)(1972).

Massachusetts welfare regulations contain broad statements regarding income and resources which echo the federal regulation:

> All income and resources, either in money, goods or services must be considered in determining need of recipients of public assistance. All income and resources which are available or can be made available are to be con-

sidered, but only income and resources which are actually being received shall be deducted . . . .

MPAPM ch. IV, § B, p. 1. The regulations then delineate sub-classifications of "resources":

Whenever free shelter is provided its value for the individual shall be included in the assistance plan at the basic rental figure per month and the same amount deducted as income.

MPAPM ch. IV, § B, p. 1, # 3.

In order to sustain DPW's ruling, we must determine that the husband's payment of $100.00 a month towards the mortgage is either income available to plaintiff for current use, or that the circumstance of plaintiff's present occupancy of the house constitutes a currently available resource. We find that husband's payments meet neither standard.

■ DPW's interpretation of its own regulations conflict with the Social Security Act and regulations promulgated pursuant to federal statutory authority. It is axiomatic that Federal law controls when such a conflict exists. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

Husband's monthly mortgage payments do not constitute income "actually available for current use." The payments are not earnings of the plaintiff as a result of any employment situation. Plaintiff does not receive this money in hand, payments being by the husband directly to the bank. They are not available, therefore, to the plaintiff as a source for meeting such basic needs as food and clothing.

If these payments provided plaintiff with shelter, either directly or indirectly, they would constitute an available resource, if not income. The facts of this case demonstrate, however, that these payments are not a source of shelter for plaintiff.

■ A resource must be in hand, readily liquidated, or under the control of the individual if it is to be legitimately considered as a "currently available resource" to the individual. Green v. Barnes, 485 F.2d 242 (10 Cir., 1973) (Barrett, J.); Wilczynski v. Harder, 323 F.Supp. 509 (D.Conn.1971).

The husband's mortgage payments fit none of these criteria. As stated, the husband's payments go straight to the mortgagee. Plaintiff receives nothing in hand. They are not under her control and certainly cannot be liquidated or otherwise diverted by her.

Moreover, these payments do not even assure plaintiff of a roof over her head. Unless the plaintiff pays an additional $84.00 a month to the bank, the mortgage will be foreclosed and the house will not be available shelter for her or her children. Plaintiff, therefore, is not even receiving "free shelter" within the purview of the DPW's own regulations. (MPAPM ch. IV, § B, p. 1, # 3). Unless she receives these welfare payments, plaintiff will be out on the street, literally as well as figuratively.

Plaintiff's equity as a tenant by the entirety does not change the picture. Such an interest cannot be liquidated readily. Neither spouse can petition for partition of the property. Mass.Ann. Laws ch. 241 § 1 (1959). Consent of both spouses is necessary before any sale can be consummated. She does not have a right to possession and, as a practical matter, has nothing more than a survivorship interest. See Dee v. Dee, Mass.App., 296 N.E.2d 521 (1973). Certainly, such a remote interest cannot be reasonably considered as a currently available resource. (Green v. Barnes, 485 F.2d 242 (10 Cir., 1973).

Given the DPW ruling, plaintiff has only one practical alternative. She can ignore her husband's payment and live some place other than the mortgaged house. The foreseeable consequence of such a move would be that she would become eligible immediately for a full shelter allowance of $103.00 per month.[2] A

---

2. It is interesting to note that under the relief plaintiff seeks she will need only $84.00 a month for shelter as opposed to the $103.- 00 she will receive if defendants prevail and she is forced to leave her home.

related probable consequence would be that her home would be sold and her survivorship interest lost.

No evidence has been offered which would warrant a finding that the probate decree is merely a device to channel husband's payments to the plaintiff in such a way that it would not effect her welfare eligibility, and we will not presume that the Probate Court would permit itself to be a party to such a subterfuge. Moreover, it is at least as logical to presume, absent any evidence to the contrary, that the decree was an accommodation between the parties designed to benefit the husband. In satisfying the terms of the decree the husband, at the same time, protects his own interest in the real estate. The requirement of the decree which provides that payments be made directly to the bank protects the husband's interests as well since he need not fear that the funds will be diverted for some other use.

What is most important to bear in mind is that plaintiff derives no benefit from husband's payments other than the opportunity to live in a particular house *if and only if* she is able to make monthly mortgage payments of $84.00. As is clear and undisputed on the record, she is unable to do this unless she receives a housing allowance from the DPW.

 The DPW has an important responsibility of ensuring that its housing payments do not constitute an undeserved windfall in the hands of any recipient. Its corollary responsibility, however, is to make sure that those who

need housing allotments receive them. Clearly, such payments to plaintiff would not be a windfall. Simply stated, she needs a housing allotment to provide shelter for her family, whether that shelter be in the home she now lives in, or in some other less desirable location.

There is nothing in the record to warrant a finding that plaintiff would be living in undue luxury if permitted to remain in her home. Moreover, given a demonstration of need, plaintiff does not become ineligible because she is able to obtain, through fortuitous or unique circumstances, a class of shelter that might be superior to that which might normally be available to her or others on welfare.

Unless the government undertakes to build a compound of identical housing units for welfare recipients, there is bound to be some disparity in the facilities which each of them obtain. Under existing regulations plaintiff is entitled to a housing supplement sufficient to put a roof over her head—in the best situation she can find—up to the statutory maximum.

 The DPW's ruling being in conflict with the Social Security Act it is hereby ordered that: the defendants [3] are permanently enjoined, unless there is a material change in factual circumstances, from reducing plaintiff's AFDC payments as a result of mortgage payments made by her separated husband. It is ordered that the plaintiff be paid an amount equal to the reduction of her shelter allowance from June, 1973 until the present time, with legal interest.

---

3. Judgment is to be entered against the DPW as well as the individual defendants since this decision is based on plaintiff's statutory claim involving federal supremacy, on which we exercised pendent jurisdiction, as opposed to plaintiff's § 1983 constitutional claim which we have found unnecessary to reach. *See* Almenares v. Wyman, 453 F.2d 1075, 1083–1085 (2 Cir. 1971), cert. denied,

405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972); Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596, 612–613 (1973). (The Supreme Court raised but did not resolve the question whether a party unable to be sued on the claim with an independent federal jurisdictional basis can be sued on a pendent claim.)